**Mohammed MANSOORI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 93–1511.

United States Court of Appeals, Seventh Circuit.

Argued July 6, 1994.

Decided Aug. 8, 1994.

Royal F. Berg, Chicago, IL (argued), for Mohammed Mansoori.

A.D. Moyer, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, Robert Kendall, Jr., Office of Immigration Litigation, Civil Div., Washington, DC, James B. Burns, Office of the U.S. Atty., Chicago, IL, Emily Radford (argued), I.N.S., William J. Howard, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for I.N.S.

Before BAUER, COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

Mohammed Mansoori is an Iranian citizen who has been a lawful permanent resident of the United States since 1986. He petitions for review of the Board of Immigration Appeal's denial of his appeal from the immigration judge's decision, declaring him deportable and statutorily ineligible for both asylum and withholding of deportation because of a prior drug conviction. Mansoori argues that the withholding of deportation provision, 8 U.S.C. § 1253(h)(2)(B) (1988 & Supp. II 1990), does not automatically preclude an alien, who has been convicted of an aggravated felony by a state court and who has been adjudged deportable, from seeking withholding of deportation. He also alleges various due process and equal protection violations and attempts to collaterally attack the constitutionality of his guilty plea to the charges underlying his deportation order. We deny the petition for review and affirm the BIA's Order.

## I. FACTUAL & STATUTORY BACKGROUND

On September 10, 1990, Mansoori pleaded guilty in the State of Illinois to one count of attempted possession of cocaine with intent to deliver; pursuant to plea negotiations, the State dropped a charge of attempted first degree murder. Because of this conviction, on October 16, 1990, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause why Mansoori should not be deported from the United States. At the deportation hearing on September 20, 1991, Mansoori conceded his deportability, and the immigration judge ("IJ") granted him leave to apply for asylum. Mansoori subsequently filed his application, alleging that his life would be in jeopardy if he was returned to Iran.[1]

An asylum request is also considered a request for withholding of deportation. 8 C.F.R. § 208.3(b) (1990). Withholding of deportation must be granted by the Attorney General if an alien will be deported to a country where his life or freedom is threatened due to his political beliefs unless "the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States." 8 U.S.C. § 1253(h)(1), (h)(2)(B) (1988). The Immigration Act of 1990, Pub.L. 101–649, 104 Stat. 4978 (1990) ("IMMACT"), enacted on November 29, 1990, amended the withholding of deportation provision by further clarifying what was meant by a "particularly serious crime":

> For purposes of subparagraph (B), an alien who has been convicted of an aggravated felony shall be considered to have committed a particularly serious crime.

§ 1253(h)(2)(B) (1988 & Supp. II 1990). An aggravated felony includes "any illicit trafficking in any controlled substance (as defined in section 802 of title 21), including any drug trafficking crime as defined in section 924(c)(2) of title 18," or any attempt to commit such crime, whether in violation of Federal or State law. 8 U.S.C. § 1101(a)(43) (1988 & Supp. II 1990). IMMACT also amended the asylum provisions so that "[a]n alien who has been convicted of an aggravated felony, ... may not apply for or be granted asylum." 8 U.S.C. § 1158(d) (1988 & Supp. II 1990).

---

1. Mansoori contends that the Iranian government issued a warrant for his arrest because of his refusal to marry the widow of a military man killed in action and because of his subsequent flight to South Korea and the United States. In addition, he claimed that his father is under house arrest due to his former employment in the Shah's government and that other male family members residing in Iran have been imprisoned because Mansoori and several of his brothers left Iran.

In July 1992, the IJ declared Mansoori deportable and statutorily ineligible for both asylum and withholding of deportation solely on the basis of his narcotics conviction. 8 U.S.C. §§ 1158(d), 1253(h)(2)(B). Mansoori appealed to the Board of Immigration Appeals ("BIA"), alleging that the IJ should have made a separate determination of dangerousness before he denied Mansoori's request for withholding of deportation under § 1253(h)(2)(B). The BIA disagreed and affirmed the decision in a per curiam order issued in February 1993, noting that this issue had been decided in *Matter of K*, Interim Decision 3163 (BIA), 1991 WL 353530 (Nov. 5, 1991).

## II. ANALYSIS

■ Mansoori maintains that the BIA's interpretation of the withholding statute is contrary to its plain meaning. He notes that if Congress had intended to bar all applications for withholding from aliens convicted of aggravated felonies, it could have used language similar to that found in the amended asylum provisions. In support of his interpretation of § 1253(h)(2)(B), Mansoori directs the court to three other proposals before Congress prior to the enactment of IMMACT that were not passed and which would have explicitly precluded convicted felons from eligibility without an analysis of dangerousness. He concludes that the failure to pass these proposals indicates that Congress did not intend a conviction to automatically bar an alien from applying for withholding of deportation. Furthermore, Mansoori argues that the INS already made a separate determination of dangerousness when it released him from custody on the posting of bond, concluding that he did not pose a threat to society. *See* 8 U.S.C. § 1252(a)(2)(B) (1988 & Supp. II 1990). Finally, Mansoori contends that the BIA's interpretation is violative of the United States' international obligations and stymies Congressional efforts to bring United States refugee law into conformance with the *1967 United Nations Protocol Relating to the Status of Refugees*, 19

U.S.T. 6223, and Article 33 of the *United Nations Convention Relating to the Status of Refugees*, 19 U.S.T. 6223, 6259–6276 (1968).

These arguments were specifically addressed and rejected in *Garcia v. I.N.S.*, 7 F.3d 1320, 1323 (7th Cir.1993). In *Garcia*, this court held that the text of § 1253(h)(2)(B) clearly indicated an intent to bar all aggravated felons from receiving withholding of deportation. *Id.* at 1324. The court noted that a comparison with the language of the asylum provision was inconclusive given that the bail provisions for alien aggravated felons indicated that Congress knew how to explicitly condition relief on an alien's dangerousness if it so desired.[2] *Id.* More importantly, however, IMMACT reflected a policy decision by Congress to systematically strip aliens who had committed serious felonies of the right to enter or remain in this country by eliminating numerous avenues of relief previously available. *Id.* at 1322, 1324. Mansoori's arguments which rely on the legislative history of IMMACT are unpersuasive because rules of statutory interpretation proscribe further inquiry into the legislative history if the text of the statute is clear. *Good Samaritan Hosp. v. Shalala*, —— U.S. ——, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993) ("The starting point in interpreting a statute is its language, for '[i]f the intent of Congress is clear, that is the end of the matter.' ") (quoting *Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)); *Jenkins v. Heintz*, 25 F.3d 536, 538 (7th Cir.1994). Accordingly, the decision in *Garcia* is controlling.

*Due Process/Equal Protection Claims*

■ Mansoori asserts that he has a meaningful right to be heard on all questions involving his right to remain in this country, and therefore, the BIA's interpretation of § 1253(h)(2)(B) violates due process. He claims that his hearing was deficient because the IJ's questions concerned only the length of time he spent in prison, whether Mr. Kriezelman was his attorney and whether he

---

**2.** The Attorney General may not release an alien convicted of an aggravated felony from custody unless the alien is not a "threat to the communi-

ty" and it is likely that he will appear for scheduled hearings. 8 U.S.C. § 1252(a)(2)(B).

understood that the purpose of the hearing was to decide whether he should be deported to Iran.

*Garcia* held that § 1253(h) creates an entitlement to withholding *only if* the alien meets specific requirements, i.e. he has not been convicted of a serious crime, and that substantive limitations on the availability of the entitlement did not violate due process. 7 F.3d at 1326. Mansoori does not dispute that he was convicted of an aggravated felony. Accordingly, he is not entitled to withholding of deportation, and the IJ's failure to examine whether Mansoori poses a current threat to the community does not state a due process claim.

■ Mansoori also alleges that the undue delay in holding his deportation hearing violated due process because he was then unable to file an asylum application before November 29, 1990, the effective date of the 1990 amendment to the asylum provision of the Immigration and Naturalization Act, IMMACT § 515(b)(1) ("The amendment ... shall apply to applications for asylum made on or after the date of the enactment of this Act [November 29, 1990]"), after which he was automatically barred from receiving asylum. Mansoori was convicted on September 14, 1990 and the Order to Show Cause why he should not be deported was issued on October 16, 1990. Yet, his hearing before the IJ was not held until September 20, 1991. Mansoori argues that the hearing should have been held before November 29, 1990 so that he could have taken advantage of the pre–1990 asylum provisions. His claim is without merit because he could have filed for asylum any time before the actual hearing date, and he offers no explanation as to why he did not.

Once the Order to Show Cause was issued and served on Mansoori, he was on notice that his status as a legal permanent resident was in jeopardy and that he might be deported. 8 U.S.C. § 1252b(a)(1) (1988 & Supp. II 1990); 8 C.F.R. § 242.1(b) (1990). He then had approximately six weeks prior to the enactment of the amendment to file for asy-

lum with the IJ, who had exclusive jurisdiction over such applications. 8 C.F.R. § 208.-1(b) (1990). Although the deportation proceeding did not officially commence until November 6, 1990, the date on which the Order to Show Cause was filed with the Office of the Immigration Judge, *see* 8 C.F.R. § 242.-1(a), there were still three weeks remaining until IMMACT went into effect. Neither the statutes nor the applicable regulations prohibit the alien from applying for asylum prior to the actual deportation hearing. Had Mansoori filed an asylum application before November 29, the IJ could not have used the 1990 amendment to § 1158(d) to reject Mansoori's application for asylum even though the deportation hearing was held after November 29. IMMACT § 515(b)(1). Because Mansoori is ineligible for asylum due to his own delay in submitting his application, his due process claim has no merit.

Mansoori's equal protection claim fails for the same reason. He argues that because the deportation proceedings were not commenced before November 29, 1990, he became ineligible for asylum even though other aliens, who were convicted of more serious crimes and who filed before November 29, were considered for political asylum. Contrary to Mansoori's mistaken belief, deportation proceedings commenced with the filing of the Order to Show Cause on November 6, 1990. Thus, Mansoori had notice of the pending deportation prior to the enactment of IMMACT and could have filed for asylum during this period.

*Invalid Guilty Plea*

■ Mansoori now claims that his plea of guilty to the underlying narcotics conviction is invalid because his attorney gave him false information pertaining to his deportability. His trial attorney told him that the decision to deport him lay within the discretion of the Attorney General; he did not tell Mansoori that he would be ineligible for both asylum and withholding of deportation because of his conviction.[3]

Immigration judges, who are also referred to as special inquiry officers, 8 C.F.R.

---

**3.** Mansoori's trial attorney advised him per letter of the following:

Title 8 U.S.C. § 1251(a)(4) describes a deportable alien as, *inter alia*, one:

convicted of a crime involving moral turpitude committed within five years of the entry and either sentenced to confinement or confined therefore in a prison or corrective institution

§ 1.1(*l*) (1990), are not Article III judges, and only possess such authority as is granted by statute or delegated to them by the Attorney General. 8 U.S.C. § 1252(b); 8 C.F.R. § 3.10 (1990). Immigration judges have been given the authority to order deportation, to reinstate orders of deportation, to rule on applications for asylum and other forms of relief available to deportable aliens, to determine the country to which the alien will be deported and to take other action consistent with applicable law. 8 C.F.R. § 242.8. Nowhere are these judges delegated the power to review an alien's criminal conviction procured in a separate criminal proceeding. This court has long stated that an alien may not collaterally attack a conviction in an INS proceeding. *Palmer v. I.N.S.*, 4 F.3d 482, 489 (7th Cir.1993); *Guillen-Garcia v. I.N.S.*, 999 F.2d 199, 204 (7th Cir.1993); *Rassano v. I.N.S.*, 377 F.2d 971, 974 (7th Cir.1966).[4] At the time of Mansoori's deportation hearing, there was no direct appeal pending; therefore, his state conviction was final for deportation purposes. *See Will v. I.N.S.*, 447 F.2d 529, 533 (7th Cir.1971) (as long as direct appeal is pending, conviction is not final). Accordingly, Mansoori cannot challenge the validity of his guilty plea to the state charges in a petition for review of his deportation proceeding.

## III. CONCLUSION

Mansoori's petition for review is DENIED and the BIA's Order is AFFIRMED.

---

for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising our [sic] of a single scheme of criminal misconduct, regardless of whether confined thereof and regardless of whether the convictions were in a single trial

. . . . .

Since the crime for which you are to plead guilty involves "moral turpitude" you may be subject to deportation because you are not a United States citizen. However, since the crime was not committed within five years of your entry into the United States, and is not a second crime, it does not appear that deportation is likely under this statute. The power to deport, *based upon a narcotics conviction*, is in the discretion of the Attorney General of the United States and the Immigration and Naturalization Service.

Petitioner's Br., App. II at 3.

4. *See also Urbina–Mauricio v. I.N.S.*, 989 F.2d 1085, 1089 (9th Cir.1993) (conviction cannot be challenged in deportation proceeding); *Gouveia v. I.N.S.*, 980 F.2d 814, 817 (1st Cir.1992) (same); *Zinnanti v. I.N.S.*, 651 F.2d 420, 421 (5th Cir. 1981) (per curiam) (INS has no authority to adjudicate the validity of convictions in deportation proceedings); *Aguilera–Enriquez v. I.N.S.*, 516 F.2d 565, 570 (6th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 776, 46 L.Ed.2d 638 (1976).