06-3432-ag
Lanferman v. Board of Immigration Appeals

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————————

August Term, 2006

(Argued: May 30, 2007                                    Decided:  August 5, 2009)

Docket No. 06-3432-ag

————————————————

RODERICK LANFERMAN,

Petitioner,

v.

BOARD OF IMMIGRATION APPEALS, EXECUTIVE  OFFICE FOR IMMIGRATION
REVIEW, U.S. DEPARTMENT OF JUSTICE, ERIC H. HOLDER, JR., BUREAU OF
IMMIGRATION & CUSTOM  ENFORCEMENT, as successor to the Immigration and
Naturalization Service, DEPARTMENT OF HOMELAND SECURITY, JANET
NAPOLITANO,[*]

Respondents.

——————————————————————————

Before: KEARSE, STRAUB, and POOLER, Circuit Judges.

——————————————————————————

Petitioner seeks review of a decision of the Board of Immigration Appeals ("BIA"),

affirming the decision of an Immigration Judge finding petitioner removable under Section

237(a)(2)(C) of the Immigration and Nationality Act for having committed a firearm-related

———————————————

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H.
Holder, Jr. is automatically substituted for former Attorney General Alberto R. Gonzales and
Secretary of Homeland Security Janet Napolitano is automatically substituted for former
Secretary of Homeland Security Michael Chertoff as respondents in this case.

1

offense, to wit, menacing in the second degree under Section 120.14 of New York Penal Law.

We reject petitioner's argument that his plea of guilty to the menacing charge was obtained in violation of his constitutional rights, because it is a collateral attack on his state court conviction.

However, before deciding whether petitioner committed a removable offense, we join another panel of this court, James v. Mukasey, 522 F.3d 250 (2d Cir. 2008), in remanding to the BIA to determine whether Section 120.14 of New York Penal Law is divisible under the modified categorical approach. Accordingly, we GRANT the petition for review, VACATE the order of the BIA, and REMAND to the agency for further proceedings consistent with this opinion.

Judge Kearse dissents in a separate opinion.

> ADAM PASKOFF, Paskoff & Tamber, LLP, New York, N.Y., for Petitioner.
>
> PAUL NAMAN, Assistant United States Attorney, for Matthew D. Orwig, United States Attorney for the Eastern District of Texas, Beaumont, T.X., for Respondent.

————————————————————

PER CURIAM:

Petitioner Roderick Lanferman, a native of Guyana, seeks review of a June 22, 2006, decision of the Board of Immigration Appeals ("BIA"), affirming the March 18, 2005, order of Immigration Judge ("IJ") Philip J. Montante, Jr., finding Lanferman removable under Section 237(a)(2)(C) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(C), for having committed a firearm-related offense. Lanferman makes two arguments on appeal. We reject the first – that his guilty plea was obtained in violation of his constitutional rights – because it is a collateral attack on his state conviction. However, as to the second – that the government has not established conviction of a firearm-related offense by clear and convincing

2

evidence – we are bound by James v. Mukasey, 522 F.3d 250 (2d Cir. 2008), and therefore remand to the BIA to decide the initial issue of whether Section 120.14 of New York Penal Law is divisible under the modified categorical approach. Accordingly, we grant the petition for review, vacate the order of the BIA, and remand to the agency for further proceedings consistent with this opinion.

**BACKGROUND**

Lanferman arrived in the United States as a lawful permanent resident in 1990. On August 8, 1996, he was convicted in Bronx Criminal Court for the offense of menacing in the second degree in violation of Section 120.14 of New York Penal Law, a misdemeanor. The underlying complaint includes a brief narrative describing the events that led to the conviction: in the course of a dispute with his wife, Lanferman allegedly threatened her with a loaded revolver. Lanferman was originally charged with several firearm-related felonies in addition to the menacing count, but the firearm charges were later dropped when Lanferman, with the assistance of a Legal Aid attorney, pleaded guilty to the menacing charge.

On September 11, 2001, the government commenced removal proceedings against Lanferman by issuing a notice to appear ("NTA"). On September 26, 2002, the government filed a superseding NTA charging Lanferman with removability under Section 237(a)(2)(C) of the INA, 8 U.S.C. § 1227(a)(2)(C), based on his conviction for menacing, which involved a firearm. Lanferman sought termination of removal proceedings and cancellation of removal under Section 240A(a) of the INA, 8 U.S.C. § 1229b(a). On May 29, 2003, the IJ issued a decision denying Lanferman's motion to terminate and denying cancellation of removal. Lanferman appealed that decision to the BIA, arguing that he pleaded guilty to an offense under Section 120.14 of New

3

York Penal Law, which has three subsections, and did not, as the IJ found, plead guilty under Section 120.14(1) of New York Penal Law, the only one of the three subsections that refers specifically to weapons, including firearms. On this ground, the BIA found that the IJ's decision was "inadequate for proper review" and remanded for further proceedings.

On March 18, 2005, the IJ issued a revised decision reaffirming his previous finding that Lanferman was removable for having committed a firearm offense. The IJ explained that because Section 120.14 of New York Penal Law "encompasses an offense that constitutes a firearm violation and offenses that do not," it is necessary to look to the record of conviction – which includes the criminal complaint, plea colloquy, and certificate of disposition – to determine whether Lanferman's offense constitutes a firearm violation under Section 237(a)(2)(C) of the INA. The IJ observed that the state complaint charges Lanferman with menacing in the second degree in violation of Section 120.14 of New York Penal Law, and specifies that Lanferman "pulled out a Hopkins and Allen Armes Co. .32 s/w CAL. revolver loaded with four live rounds, and pointed the revolver at the victim, placing her in reasonable fear of physical injury, serious physical injury or death." The IJ also relied on the transcript of the plea colloquy, which includes the following:

> THE COURT: Do you admit on August 2, 1996, at approximately 12:10 a.m., you were at 654 East 125th Street, County of the Bronx, State of New York, and that you did commit the offense of menacing, is that right?
> THE DEFENDANT: Yes, Ma'am.
> THE COURT: In that you did pull out a revolver and point the revolver at the complainant, Ms. Lanferman, and menace her with that weapon, is that right?
> THE DEFENDANT: Yes, Ma'am.

Thus, the IJ found Lanferman "removable as charged under [S]ection 237(a)(2)(C) by evidence that is clear, unequivocal, and convincing."

4

On June 22, 2006, the BIA affirmed the IJ's determination that Lanferman was removable based on his conviction for a firearm offense. In reaching this conclusion, the BIA specifically referred to the factual allegations in the criminal complaint and directly quoted those portions of the plea colloquy relied on by the IJ. The BIA also upheld the IJ's denial of cancellation of removal.

On July 21, 2006, Lanferman petitioned this court for review of the BIA decision.

**DISCUSSION**

We generally lack jurisdiction to review final orders of removal based on an alien's conviction for certain crimes, including firearm offenses. See 8 U.S.C. § 1252(a)(2)(C). However, we retain jurisdiction to review "constitutional claims or question of law," 8 U.S.C. § 1252(a)(2)(D), including whether a particular conviction constitutes a removable offense under the INA, see Blake v. Gonzales, 481 F.3d 152, 155-56 (2d Cir. 2007).

**1. The Guilty Plea**

On appeal, Lanferman first argues that the agency erred in relying on his guilty plea, because that plea was obtained in violation of certain constitutional rights. This "contention is nothing more than a collateral attack on his state conviction. Collateral attacks are not available in a . . . petition challenging the BIA's removal decision." Abimbola v. Ashcroft, 378 F.3d 173, 181 (2d Cir. 2004); see also Vargas v. Dep't of Homeland Sec., 451 F.3d 1105, 1107 (10th Cir. 2006); Taylor v. United States, 396 F.3d 1322, 1330 (11th Cir. 2005); Mendes-Alcaraz v. Gonzales, 464 F.3d 842, 844 n.14 (9th Cir. 2006); Drakes v. INS, 330 F.3d 600, 606 (3d Cir.

5

2003); <u>Mansoori v. INS</u>, 32 F.3d 1020, 1024 (7th Cir. 1994).[1]  Accordingly, Lanferman's first

argument fails.

**2.      Categorical Analysis of Section 120.14 of New York Penal Law**

Lanferman next contends that the government has not established conviction of a firearm

offense by clear and convincing evidence.  Pursuant to Section 237(a)(2)(C) of the INA, non-

citizens who commit certain firearm offenses are deportable.  <u>See</u> 8 U.S.C. § 1227(a)(2)(C).[2]

Because the BIA is responsible for administering the INA, we grant deference to the Board's

interpretation of this removal provision under <u>Chevron U.S.A. Inc. v. Natural Resources Defense</u>

<u>Council, Inc.</u>, 467 U.S. 837, 842-43 (1984).  <u>See</u> <u>Kuhali v. Reno</u>, 266 F.3d 93, 102 (2d Cir.

2001).  Thus, we have specifically upheld as reasonable the BIA's view that Section 237(a)(2)(C)

"encompass[es] convictions of crimes for which possessing or carrying firearms is an element."

<u>Id.</u> at 103.  We owe no deference, however, "to the Board in its interpretation of criminal statutes

that it does not administer."  <u>Id.</u> at 102.  Therefore, we review de novo the BIA's determination

"that an offense, as defined by a particular criminal statute, falls within [the] terms" of a removal

provision of the INA.  <u>Id.</u>

In assessing an alien's removability, we have adopted "a categorical approach that looks

---

[1]  Collateral attack may be permissible in rare circumstances such as where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963), <u>see, e.g.</u>, <u>Drakes</u>, 330 F.3d at 605, but no such error is alleged here.

[2]  That Section states: "Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable."  8 U.S.C. § 1227(a)(2)(C).

6

to the elements of the offense as defined by statute, rather than to the particular facts of the alien's criminal activity." Id. at 103; see Dulal-Whiteway v. U.S. Dep't of Homeland Sec., 501 F.3d 116, 124-27 (2d Cir. 2007) (discussing development of categorical approach), abrogated on other grounds by Nijhawan v. Holder, 129 S. Ct. 2294, 2298 (2009). In some instances, however, a statute may be subject to what we have termed the "modified categorical approach," which allows for limited review of the record. See, e.g., Dulal-Whiteway, 501 F.3d at 122. The modified categorical approach calls for a two-step inquiry: "first, we determine if the statute is 'divisible,' such that some categories of proscribed conduct render an alien removable and some do not; second, we consult the record of conviction to ascertain the category of conduct of which the alien was convicted." Id. at 126.[3] When we review the record of conviction, "the [modified] categorical approach permits inquiry into the fact of conviction of a specific offense but prohibits reference to or examination of the particular factual circumstances underlying that conviction."

---

[3] Our case law provides that the "record of conviction" includes "a charging document (such as an indictment), a signed plea agreement, a verdict or judgment of conviction, a record of the sentence; a plea colloquy transcript, and jury instructions," Dulal-Whiteway, 501 F.3d at 129 (citing 8 U.S.C. § 1229a(c)(3)(B)), and does not include a Pre-Sentencing Report or restitution order, id. at 129-30. The Supreme Court's recent decision in Nijhawan seems to suggest, in the context of determining the particular circumstances in which a crime was committed, that an immigration judge is permitted to review a broader range of documents as long as an alien is given a "fair opportunity" to dispute the pertinent claim, and as long as the "clear and convincing" standard is met. 129 S. Ct. at 2303. The statute at issue here, by contrast, describes a generic crime, and does not require the "particular circumstances" analysis. See infra note 9. This issue in this case involves the divisibility of a statute. The Supreme Court has explained that the documents that may be considered under the divisibility analysis serve a "very different purpose," Nijhawan, 129 S. Ct. at 2303, from those that may be considered for Nijhawan's "particular circumstances" analysis, see id. at 2302-03. Nijhawan does not change the list of documents that may be considered in the divisibility analysis, and we do not extend it to such a context.

7

Dickson v. Ashcroft, 346 F.3d 44, 52 (2d Cir. 2003);[4] see also Alsol v. Mukasey, 548 F.3d 207,

216 n.8 (2d Cir. 2008) ("[E]ven under the modified categorical approach, the focus remains on

the actual offense of conviction.").

In giving his plea, Lanferman stated only that he was pleading guilty to a violation of

Section 120.14 of New York Penal Law.  That Section states:

> A person is guilty of menacing in the second degree when:
>
> 1. He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; or
>
> 2. He or she repeatedly follows a person or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place another person in reasonable fear of physical injury, serious physical injury or death; or
>
> 3. He or she commits the crime of menacing in the third degree in violation of that part of a duly served order of protection, or such order which the defendant has actual knowledge of because he or she was present in court when such order was issued, pursuant to article eight of the family court act, section 530.12 of the criminal procedure law, or an order of protection issued by a court of competent jurisdiction in another state, territorial or tribal jurisdiction, which directed the respondent or defendant to stay away from the person or persons on whose behalf the order was issued.[5]

N.Y. Penal Law § 120.14.  As Lanferman did not specify the subsection to which he was

---

[4] It seems certain that the omission of the word "modified" is an oversight since this statement in the opinion is made following the Court's determination that the statute at issue was divisible under the modified categorical approach and in discussing review of the "record of conviction," reference to which is only permitted under the modified categorical approach.

[5] New York Penal Code § 120.15, which criminalizes the crime of menacing in the third degree provides: "A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury."

pleading, and Section 120.14 (and indeed its three subsections) "encompass[] both acts that do and do not [constitute a removable offense]," Michel v. INS, 206 F.3d 253, 263 (2d Cir. 2000) (quotation marks omitted), we next ask whether Section 120.14 is subject to the modified categorical approach such that we may look to the record of conviction. To do so we must first ascertain whether Section 120.14 is divisible. If it is, then Lanferman is removable because the complaint explicitly charges him under "P.L. 120.14(1)" and recites the elements of subsection (1), alleging "that the defendant did: . . . intentionally place or attempt to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm."[6] And, the plea colloquy reveals that Lanferman used a revolver in committing the offense.

We "have explicitly found statutes divisible only where the removable and non-removable offenses they describe are listed in different subsections or comprise discrete elements of a disjunctive list of proscribed conduct." Dulal-Whiteway, 501 F.3d at 126. Nevertheless, we recently made clear that the exact parameters of the divisibility inquiry have not been determined, noting that we have never "explicitly queried whether [divisibility] extends to a statute . . . where only one type of generic conduct . . . is proscribed, but an alien can commit the conduct both in ways that would render him removable . . . and in ways that would not . . . ." Id. at 127; see also James, 522 F.3d at 255 (noting open question); Gertsenshteyn v. U.S. Dep't of

---

[6] Lanferman argues that the complaint reveals a violation of subsection (3), because the narrative portion of that document indicates that Lanferman had violated a protective order. However, although the complaint does include that factual allegation, it does not charge Lanferman with a violation of subsection (3) or recite the elements of that provision.

9

Justice, 544 F.3d 137, 149 (2d Cir. 2008) (same).

In Dulal-Whiteway, we outlined the three approaches that our Circuit might adopt, stating that we might permit divisibility:

> (1) where the alternative means of committing a violation are enumerated as discrete alternatives, either by use of disjunctives or subsections, see 501 F.3d at 126-27;

> (2) where either the above approach permits divisibility or the statute of conviction or removability provision "'invite[s] inquiry into the facts underlying the conviction at issue,'" when, for example, "'it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue,'" id. at 127-28 (quoting Singh v. Ashcroft, 383 F.3d 144, 161-62 (3d Cir. 2004)); and

> (3) in "all statutes of conviction . . . regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct," id. at 128.

Faced with this same question in James, "we deem[ed] it the wiser and more prudent course to give the BIA an opportunity to consider, in the first instance and in light of our recent pronouncements on this issue" when statutes are divisible. 522 F.3d at 256; see also Gertsenshteyn, 544 U.S. at 148 (remanding for determination of divisibility). Like the James panel, we remand to the BIA, but comment briefly on the analysis of Lanferman's removability under each approach to divisibility.

The first approach outlined in Dulal-Whiteway would require that Section 120.14 explicitly reference a class of weapons that are categorically firearms in order to be deemed divisible. See, e.g., Vargas-Sarmiento, 448 F.3d at 167 ("A criminal statute is 'divisible' if it encompasses multiple categories of offense conduct, some, but not all, of which would categorically constitute aggravated felonies under the INA." (emphasis added)). Under this approach, Lanferman cannot be found removable because none of the three subsections of Section 120.14 categorically constitutes a firearm offense under Section 237(a)(2)(C) of the INA. Subsections (2) and (3) do not describe

10

offenses that categorically involve firearms. Nor does subsection (1), which is itself divisible. See

Canada v. Gonzales, 448 F.3d 560, 567 (2d Cir. 2006) (noting that enumerated subsections are not

a prerequisite to a finding of divisibility). Thus, Section 120.14(1) punishes three types of menacing:

(i) with a "deadly weapon," (ii) with a "dangerous instrument," and (iii) with "what appears to be

a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.14(1). In

this regard, we note that the BIA incorrectly described a firearm as an "element" of subsection (1)

of Section 120.14.[7] None of the three categories in subsection (1) can sustain a deportability finding

since each "encompasses both acts that do and do not [constitute a firearm offense]." Michel, 206

F.3d at 263.

The second approach described in Dulal-Whiteway, would permit divisibility in "all statutes

of conviction . . . regardless of their structure, so long as they contain an element or elements that

could be satisfied either by removable or non-removable conduct." 501 F.3d at 128.[8] Under this

approach, Section 120.14(1), which the criminal complaint denotes as the applicable subsection,

---

[7] New York law provides that the "identity" of a "dangerous instrument," or a "deadly weapon" is not an element of Section 120.14(1). See People v. Kaid, 842 N.Y.S.2d 55, 60 (App. Div. 2d Dep't 2007) (concluding that counts not duplicitous even though more than one dangerous instrument allegedly used by defendants because the identity of a dangerous instrument is not an element of either assault in the second degree pursuant to N.Y. Penal Law § 120.05(2) and menacing in the second degree pursuant to N.Y. Penal Law § 120.14(1)); see also People v. Bartkow, 96 N.Y.2d 770, 772 (2001) ("Menacing simply requires an intent to place another person in 'reasonable fear of physical injury' by 'displaying' a weapon or dangerous instrument" (emphasis omitted; quoting N.Y. Penal Law § 120.14(1)). Thus the deadly weapon used in violation of Section 120.14(1) could be a firearm, but the element itself is not limited to firearms.

[8] Of the three approaches, we note that this finds the least support in our precedent because it does damage to the notion of fixed categories, which our prior cases have embraced. In many instances, it would permit the exception, the modified categorical approach, to erase the rule, the categorical approach.

11

would be divisible because a "deadly weapon" may or may not be a firearm. Because the plea colloquy established that the "deadly weapon" at issue was a firearm, Lanferman would be removable.

The third approach, described in Dulal-Whiteway would permit divisibility where the statute of conviction is phrased in the disjunctive or divided into subsections, or where the immigration statute invites inquiry into the facts underlying the conviction at issue. See Singh, 383 F.3d at 148. The Third Circuit, the progenitor of this approach, concluded that a statute invites such inquiry when "it expresses such a specificity of fact that it almost begs an adjudicator to examine the facts at issue." Id. at 161. Section 237(a)(2)(C) contains language that can be read both as inviting and not inviting such inquiry because it contains terms of specificity but also unitary concepts. As we do not need to at this juncture, we do not decide whether Section 237(a)(2)(C) meets Singh's specificity requirements, but rather think it more advisable to await the BIA's determination on remand.[9]

---

[9] Nijhawan, recently handed down by the Supreme Court, does not require that we adopt any of the three approaches outlined in Dulal-Whiteway. Nijhawan involved the deportation of an alien for commission of an aggravated felony. The INA defines an aggravated felony as inter alia, a fraud or deceit crime "in which the loss to the victim . . . exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). Nijhawan was convicted of conspiracy to commit mail fraud and other crimes. Although the jury made no findings as to the loss amount, Nijhawan had stipulated at sentencing that the loss amount exceeded $100 million. See Nijhawan, 129 S. Ct. at 2298. Nijhawan argued that, under a categorical approach, there should be no inquiry into the particular circumstances of his crime and therefore, because a loss amount was not an element of the crimes he was convicted of, he did not commit an aggravated felony and could not be removed. The Supreme Court rejected this argument, holding instead that the loss amount "does not refer to an element of the fraud or deceit crime. Rather it refers to the particular circumstances in which an offender committed a (more broadly defined) fraud or deceit crime on a particular occasion." Id. Thus, while the Court rejected the categorical approach on the facts of Nijhawan, it did not cast doubt on the validity of the approach as a general matter. See id. at 2298-99 (stating that if the removal statute referred to a "generic crime," the statute defining the criminal offence would need to have "an appropriate monetary threshold," for Nijhawan to be removable). In contrast, we have already held that the statute here, Section 237(a)(2)(C), falls on the "generic crime" side of the equation, see Kuhali v. Reno, 266 F.3d 93, 103 (2001) ("[I]in determining whether

**CONCLUSION**

In view of <u>James</u>, we remand to the BIA to allow it to consider in the first instance the question of the divisibility of Section 120.14 in light of the legal framework established by our cases. For the foregoing reasons, the petition for review is GRANTED, the order of removal is VACATED, and the case is REMANDED to the BIA for proceedings consistent with this decision.

---

'possessing' or 'carrying' firearms is an element of these other crimes, the plain language of INA § 237(a)(2)(C) supports the adoption of a categorical approach that looks to the elements of the offense as defined by statute, rather than to the particular facts of the alien's criminal activity."), and further, Section 237(a)(2)(C), unlike the statute in <u>Nijhawan</u>, does not contain words such as "in which" that would modify the offense so as to indicate that the statute's reference to a firearm is circumstance-specific, <u>see</u> <u>Nijhawan</u>, 129 S. Ct. at 2301. In sum, <u>Nijhawan</u> does not change the conclusion that Section 237(a)(2)(C) refers to a crime under which Lanferman "is convicted under [a] law," and accordingly is subject to the categorical approach. <u>Id.</u> at 2298.

Nor does the language in <u>Nijhawan</u> to which the dissent cites alter our analysis. <u>See</u> **Dissent Op. at 4**. That language is dictum, <u>see</u> <u>Nijhawan</u>, 129 S. Ct. at 2297 ("The question before us is whether the italicized language refers to an element of the fraud or deceit 'offense' as set forth in the particular fraud or deceit statute defining the offense of which the alien was previously convicted."), and the Supreme Court did not pass on the question that is at the heart of this case – when can a statute, which is subject to the categorical approach, be deemed divisible under the modified categorical approach.

13

KEARSE, Circuit Judge, dissenting:

The pertinent section of the Immigration and Nationality Act ("INA") provides that "[a]ny alien who at any time after admission is convicted under any law of . . . using . . . a firearm . . . (as defined in section 921(a) of title 18) in violation of any law is deportable." 8 U.S.C. § 1227(a)(2)(C); see 18 U.S.C. § 921(a)(3) ("firearm" includes any weapon, other than an antique, that is "designed to . . . expel a projectile by the action of an explosive"). Under federal law, using a firearm includes displaying the firearm in relation to a predicate offense. See, e.g., Bailey v. United States, 516 U.S. 137, 148 (1995) (construing 18 U.S.C. § 924(c)). Under New York Law, a person is guilty of "menacing" if he or she "intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 120.14(1) (emphasis added); see id. § 10.00(12) ("deadly weapon" includes "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged"). Lanferman, upon his plea of guilty, was convicted of menacing, in violation § 120.14, after he admitted that he "did pull out a revolver and point the revolver at the complainant, . . . and menace her with that weapon . . . . [f]or the purpose of putting her in fear of physical injury."

(People v. Lanferman, No. 96X045443, Crim. Ct., Bronx County, N.Y., Plea Transcript, Aug. 8, 1996 ("Plea Tr."), at 3-4 (emphasis added).) Accordingly, I would deny the petition for review of the decision that Lanferman is removable as a result of his conviction of using a firearm in violation of New York law.

I have several difficulties with the majority's decision to remand to the Board of Immigration Appeals ("BIA") for a determination as to whether § 120.14 is "divisible"--i.e., whether it "'encompasses multiple categories of offense conduct, some, but not all, of which would categorically constitute'" a removable offense, Blake v. Gonzales, 481 F.3d 152, 158 (2d Cir. 2007) (quoting Vargas-Sarmiento v. U.S. Department of Justice, 448 F.3d 159, 167 (2d Cir. 2006)). First, the determination as to whether a given section of a penal code is divisible entails the interpretation of a law that the BIA does not administer. As the majority notes, "[w]e owe no deference . . . to the Board in its interpretation of criminal statutes that it does not administer," Majority Opinion ante at 6 (internal quotation marks omitted). Further, given that our cases have repeatedly discussed "three approaches that our Circuit might adopt" in determining divisibility, id. at 10 (emphasis mine), i.e., the three instances in which "we might permit divisibility," id. (emphasis mine), our remand for the BIA to decide whether § 120.14 is divisible is merely an invitation for the BIA to guess which approach our Court will adopt. And, of course, regardless of which approach the BIA concludes we will adopt, we will owe that conclusion no deference.

Second, and more importantly, it escapes my understanding as to why the majority believes that § 120.14, which is divided into three numbered subsections, even presents a question of divisibility. It is of course true that subsection (1) of § 120.14 encompasses more than menacing with a firearm, as it prohibits menacing with other types of weapons as well. But, as the majority properly recognizes, "subsection (1) . . . is itself divisible," Majority Opinion <u>ante</u> at 11.

The majority states that Lanferman "did not specify the subsection [of § 120.14] to which he was pleading." Majority Opinion <u>ante</u> at 8-9. But it is clear that the state court questioned Lanferman about conduct that fit expressly within subsection (1), and asked no questions about conduct prohibited by the other subsections of § 120.14. (<u>See</u> Plea Tr. 1-7.) Thus, the state court asked, and Lanferman specified, that he "did commit the offense of menacing . . . . [i]n that [he] did pull out a revolver and point the revolver at the complainant, Ms. Lanferman, and menace her with that weapon . . . . [f]or the purpose of putting her in fear of physical injury." (<u>Id</u>. at 3-4.) These admitted facts fit only subsection (1) of § 120.14, no other subsection.

The Supreme Court has provided guidance as to the way in which we should determine whether a prior conviction was one that has consequences in a subsequent legal proceeding; most often the issue has been whether a sentence should be enhanced because of a prior conviction for a crime of violence. <u>See</u>, <u>e.g.</u>, <u>Chambers v. United States</u>, 129 S. Ct. 687 (2009); <u>James v. United States</u>, 550

U.S. 192 (2007); Shepard v. United States, 544 U.S. 13 (2005); Taylor v. United States, 495 U.S. 575 (1990). In its most recent opinion, in a deportation case, the Court reiterated that

> sometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately. And it can happen that some of these crimes involve violence while others do not. . . . In such an instance, we have said, a court must determine whether an offender's prior conviction was for the violent, rather than the nonviolent . . . , by examining "the indictment or information and jury instructions," Taylor, [495 U.S.] at 602, . . . or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or "some comparable judicial record" of the factual basis for the plea. Shepard v. United States, 544 U.S. 13, 26 . . . (2005).

Nijhawan v. Holder, 129 S. Ct. 2294, 2299 (2009) (emphases added). This process is equally applicable to the determination of whether a prior conviction involved using a firearm. I thus see no reason for concluding that the immigration judge was not allowed to find Lanferman removable on the basis of the transcript of his plea allocution admission that he threatened the complainant with a revolver.

Finally, I do not agree with the majority's view, see ante at 3, that "we are bound by James v. Mukasey, 522 F.3d 250 (2d Cir. 2008)," to remand to the BIA for a determination of whether § 120.14 of the New York Penal Law is divisible. James v. Mukasey--which found it "prudent" to remand to the BIA, 522 F.3d at 259--involved a conviction for Endangering the Welfare of a Child in violation of New York Penal Law § 260.10(1), which prohibits "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than

seventeen years old," a prohibition that encompasses many kinds of conduct. James was convicted of violating § 260.10(1) after he admitted having had "sexual contact with a minor," James v. Mukasey, 522 F.3d at 258 (internal quotation marks omitted). The question was whether that conviction was one for "sexual abuse" within the meaning of 8 U.S.C. § 1101(a)(43)(A). We noted that "the federal statute from which the BIA has drawn guidance" as to the meaning of the term sexual abuse in § 1101(a)(43)(A) is narrower than the definition of sexual abuse or sexual contact under New York law, under which a "kiss on the mouth constitutes 'sexual contact.'" James v. Mukasey, 522 F.3d at 258 (quoting People v. Rondon, 152 Misc.2d 1018, 579 N.Y.S.2d 319, 320-21 (N.Y. Crim. Ct. 1992) ("a kiss on the mouth without the insertion of a tongue can be considered . . . sexual abuse")). Given the differing federal and state definitions of sexual abuse, as well as the open question as to the divisibility of § 260.10, the James v. Mukasey panel found it "prudent" to remand to the BIA to allow it, in the first instance, to consider "whether . . . James's conviction for Endangering the Welfare of a Child under New York law constitutes the aggravated felony of sexual abuse of a minor under the INA." 522 F.3d at 259.

I see no similar definitional problems in interpreting the term "firearm" or in understanding that a "revolver" constitutes a firearm. And given Lanferman's explicit plea-allocution admission that he "did pull out a revolver and point the revolver at the complainant" (Plea Tr. at 3-4), I cannot agree with the majority that his "conviction of a firearm-related offense" was "not

- 5 -

established . . . by clear and convincing evidence," Majority Opinion ante at 2-3.

Accordingly, I dissent.