# Matter of Roderick B. LANFERMAN, Respondent

*Decided March 9, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A criminal statute is divisible, regardless of its structure, if, based on the elements of the offense, some but not all violations of the statute give rise to grounds for removal or ineligibility for relief.

FOR RESPONDENT: Adam Paskoff, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY: Steven J. Connelly, Assistant Chief Counsel

BEFORE: Board Panel: COLE, PAULEY, and WENDTLAND, Board Members.

PAULEY, Board Member:

This case was last before us on June 22, 2006, when we dismissed the respondent's appeal from the Immigration Judge's decision of March 18, 2005, ordering him removed from the United States under section 237(a)(2)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(C) (2000), as an alien convicted of a firearms offense. The factual basis for the finding of removability was the respondent's 1996 conviction for menacing in the second degree in violation of section 120.14 of the New York Penal Law. On August 5, 2009, the United States Court of Appeals for the Second Circuit remanded the case for us "to decide the initial issue of whether Section 120.14 of the New York Penal Law is divisible under the modified categorical approach." *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d 84, 86 (2d Cir. 2009). Upon consideration of this issue, we again conclude that the respondent is removable as charged and will dismiss his appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guyana who was admitted to the United States as a lawful permanent resident on December 24, 1990. On August 8, 1996, he was convicted in the Criminal Court of the City of New York, County of Bronx, New York, of menacing in the second degree

in violation of section 120.14 of the New York Penal Law. Based on this conviction, the respondent was charged under section 237(a)(2)(C) of the Act, and the Immigration Judge found him removable in a decision dated May 29, 2003. The respondent applied for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2000), which was denied by the Immigration Judge in the exercise of his discretion. Following the respondent's appeal, we remanded the record in a decision dated September 7, 2004, which resulted in the Immigration Judge's decision of March 18, 2005. In our June 22, 2006, decision, we dismissed the respondent's appeal, finding that he was removable and that his application for cancellation of removal was properly denied as a matter of discretion.

## II. ANALYSIS

The Second Circuit has identified three analytical approaches to potentially divisible statutes. *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d at 90-92 (citing *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d 116 (2d Cir. 2007), *abrogated on other grounds by Nijhawan v. Holder*, 557 U.S. 29 (2009), and *James v. Mukasey*, 522 F.3d 250 (2d Cir. 2008)). Under the first approach, divisibility would be permitted "where the alternative means of committing a violation are enumerated as discrete alternatives, either by use of disjunctives or subsections." *Id.* at 90. Under the second approach, divisibility would be permitted "where the statute of conviction is phrased in the disjunctive or divided into subsections, or where the immigration statute invites inquiry into the facts of the underlying conviction at issue." *Id.* at 91-92 (citing *Singh v. Ashcroft*, 383 F.3d 144, 148 (3d Cir. 2004)). Under the third approach, divisibility would be permitted in "all statutes of conviction . . . regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct." *Id.* at 90 (quoting *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d at 128) (internal quotation marks omitted).

The issue before us, under the terms of the remand, is which of these approaches is most suitable for application in the immigration context. For the following reasons, we adopt the third approach.

### A. Background on Divisibility

The question of a criminal statute's divisibility arises in the application of the categorical approach to determine whether an offense prohibited by the statute in question comes within a specific ground of removability. *See Taylor v. United States*, 495 U.S. 575 (1990); *see also Shepard v. United States*, 544 U.S. 13 (2005). In its original form, the categorical approach limited the

analysis of the alien's removability to the criminal statute of conviction, with no consideration of the underlying conduct on which the conviction may have been based. *See Taylor v. United States*, 495 U.S. at 600; s*ee also Matter of Babaisakov*, 24 I&N Dec. 306, 310-11 (BIA 2007). However, the Court subsequently made clear in *Shepard* that where a statute was effectively divisible, documents that are part of the record of conviction, such as the charging instrument, jury instructions, or, in the case of a plea, the plea transcript, could be used to demonstrate that the defendant was convicted of a particular type of violation. This inquiry has come to be known as the modified categorical approach.

The principal purpose served by the categorical approach is to limit the inquiry to what crime the offender was necessarily *convicted of* (as opposed to the offender's underlying conduct) and, thus, to avoid ad hoc mini-trials on whether an offender's conduct was more or less culpable than what his actual conviction required. *See Taylor v. United States*, 495 U.S. at 600-02; *Garcia v. Holder*, 638 F.3d 511, 517 (6th Cir. 2011); *United States v. Piccolo*, 441 F.3d 1084, 1087 (9th Cir. 2006). Originally, the categorical approach was deemed to involve a purely abstract inquiry into the categorical nature of the elements of a criminal statute. But recently the Supreme Court has engrafted a threshold inquiry that requires an initial determination whether the breadth of conduct covered by a criminal statute *in its actual application* is such that there is a "realistic probability" that the statute would be successfully employed to prosecute the conduct at issue. *See Gonzales v. Duenas-Alvarez,* 549 U.S. 183, 193 (2007) (applying the "realistic probability" standard to the categorical determination of an aggravated felony in the immigration context); *see also James v. United States*, 550 U.S. 192, 208 (2007); *Matter of Silva-Trevino*, 24 I&N Dec. 687, 697-98 (A.G. 2008) (applying the same threshold inquiry to determinations whether a conviction is for a crime involving moral turpitude).

The circuit courts have not uniformly applied the modified categorical approach in the immigration context. *See, e.g.*, *Conteh v. Gonzales*, 461 F.3d 45, 54-57 (1st Cir. 2006). However, they all agree on one aspect of the modified categorical approach, namely, that its functional purpose is to determine when documents in an alien's record of conviction may be considered to ascertain if the crime at issue falls within the class of offenses defined by the applicable provision of inadmissibility under section 212 of the Act, 8 U.S.C. § 1182 (2006), or removability under section 237.[1]

---

[1] The Supreme Court has stated that in the context of a nonjury conviction, the Board, the Immigration Judges, and the Federal courts may consider, as evidence in the record

(continued...)

The divisibility calculus, which is implicated by the modified categorical approach, requires that we carefully examine the State or Federal law at issue to understand how a particular offense is prosecuted—that is, what elements must be shown beyond a reasonable doubt (including sentencing factors in some instances). We view a criminal statute as divisible only if, based on the *elements* of the offense, some but not all violations of the statute give rise to grounds for removal or ineligibility for relief.[2] *See, e.g.*, *Matter of Vargas*, 23 I&N Dec. 651, 654 (BIA 2004).

Sometimes this simply requires the adjudicator to look at the alien's criminal record to determine whether his crime "matches" the elements that define the offense of removal, such as burglary in the aggravated felony definition. At other times, the removal provision does not refer to a specific offense like burglary with a settled generic definition but instead creates an imprecise standard that must be compared to the elements of a State or Federal offense. For example, section 101(a)(43)(F) of the Act, 8 U.S.C. § 101(a)(43)(F) (2006), defines the term aggravated felony to mean certain "crimes of violence" under 18 U.S.C. § 16 (2006). In turn, § 16(b) defines a crime of violence as a felony offense that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Unlike a "burglary offense," this "crime of violence" definition does not contain discrete elements that are tied to specific facts. Rather, a crime of violence is defined in probabilistic terms by reference to the level of "risk" that inheres in the crime "by its nature." When applied to this kind of Federal standard, the categorical approach still focuses on the "elements" of the alien's crime in a sense, but it no longer contemplates a *matching* of elements. Instead, the inquiry focuses more loosely on whether the alien's crime fits within a discrete *category* of offenses that would *ordinarily* be expected to present the risk described in 18 U.S.C. § 16(b). *See, e.g.*, *Chambers v. United States*, 555 U.S. 122 (2009); *Begay v. United States*, 553 U.S. 137 (2008); *James v. United States*, 550 U.S. at 208; *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009). Such

---

(...continued)
of conviction, the "charging document," the "terms of the plea agreement," the "transcript of colloquy between judge and defendant," or "some comparable judicial record" of information about the "factual basis for the plea." *Gonzales v. Duenas-Alvarez*, 549 U.S. at 187 (quoting *Shepard v. United States*, 544 U.S. at 26) (internal quotation marks omitted).

[2] An element is a fact that, in a criminal prosecution, must be proved beyond a reasonable doubt to convict or to impose an enhanced sentence. *See, e.g.*, *Apprendi v. New Jersey*, 530 U.S. 466, 472 (2000); *In re Winship*, 397 U.S. 358, 361 (1970); *Matter of Eslamizar*, 23 I&N Dec. 684, 688 (BIA 2004).

imprecise standards are subject to disagreement by reasonable minds and therefore complicate the divisibility analysis.

## B. First Approach

In the first formulation described by the Second Circuit, the modified categorical approach may only be applied if certain structural or grammatical statutory characteristics are present on the face of the statute of conviction, such as the enumeration of a list of qualifying alternative elements in discrete subsections or the separation of various means of committing the offense within disjunctively divided words or phrases. The Fifth Circuit has followed this formulation in several cases. *See, e.g.*, *Amouzadeh v. Winfrey*, 467 F.3d 451, 455 (5th Cir. 2006); *Larin-Ulloa v. Gonzales*, 462 F.3d 456 (5th Cir. 2006). However, we find this methodology unnecessarily formulaic and confining as regards the appropriate purposes to be served by the modified categorical approach in the immigration context.

In our view, the structural design of a criminal statute is frequently of limited relevance to how the statute is interpreted by the courts charged with its application and thus is, at best, just a starting point from which a full explication of the statute may be developed. Commonly, the breadth of application of the statute is a function of the inclusiveness of its terms or of how it has been interpreted within a larger statutory, decisional, and common law framework by the courts of the controlling jurisdiction.[3]

---

[3] When examining the law of the prosecuting jurisdiction, it is paramount to understand that the "elements" of an offense will not always be clearly set forth within the four corners of a single criminal statute. The adjudicator therefore must look beyond the statutory language to other parts of the law of the prosecuting jurisdiction. For example, many statutes delineate crimes by using general terms—such as "controlled substance" or "deadly weapon"—which can only be understood by looking to *other* definitional statutes, or perhaps case law. Furthermore, courts sometimes put judicial "glosses" on statutory terms, changing their meaning in subtle (or not so subtle) ways. *See, e.g.*, *People v. Mansfield*, 245 Cal. Rptr. 800, 802 (Cal. Ct. App. 1988) (holding that although section 242 of the California Penal Code defines "battery" to require "force or violence" against another, "[t]he word 'violence' has no real significance"). Moreover, in a number of jurisdictions, criminal statutes do not define offense elements at all, but instead leave that task to the courts. *See, e.g.*, *Zimmerman v. Commonwealth*, 585 S.E.2d 538, 539 (Va. 2003) ("In this jurisdiction, we adhere to the common law definition of assault, there having been no statutory change to the crime."); *State v. Byrd*, 887 P.2d 396, 399 (Wash. 1995) ("Because 'assault' is not defined in the statute, courts resort to the common law for

(continued...)

We agree that a statute containing discrete subsections or provisions phrased in the disjunctive is divisible. *See, e.g.*, *Oouch v. U.S. Dep't of Homeland Sec.*, 633 F.3d 119, 122 (2d Cir. 2011) (acknowledging that it is settled law in the Second Circuit that a statute drafted as discrete offenses in a disjunctive list is divisible if one or more offenses in the list, but not all, are grounds for removal). However, we find that such statutes *fail to fully describe* the category of divisible statutes, given the variations in criminal laws from jurisdiction to jurisdiction. Thus, we decline to adopt the first formulation set forth by the Second Circuit.

## C. Second Approach

The second of the divisibility approaches presented for our consideration by the Second Circuit was developed by the Third Circuit in *Singh v. Ashcroft*, 383 F.3d 144. Under this formulation, the modified categorical approach is applied when either (1) the statute of conviction is phrased in the disjunctive or divided into subsections such that some variations of the crime of conviction meet the requisites for removability under the immigration laws and others do not, or (2) the relevant removability provision "invite[s] inquiry into the facts underlying the conviction." *Id.* at 161-62; *see also Stubbs v. Att'y Gen. of U.S.*, 452 F.3d 251, 254-55 (3d Cir. 2006).

The first prong of this approach is very like, if not identical to, the structural approach proposed in the first formulation. The second prong supplements the divisibility definition by looking, not to the statute of conviction, but to whether the ground of removability "invites inquiry" into the underlying facts. In *Singh v. Ashcroft*, 383 F.3d at 161, the Third Circuit specifically identified the qualifier in section 101(a)(43)(M)(i) of the Act, "in which the loss to the victim or victims exceeds $10,000," as the "prototypical example" of an enumerating statute that invites further factual inquiry.

We do not believe that this second prong of the Third Circuit's approach involves a divisibility analysis. In actuality, the issue addressed by the second prong is better defined as whether the categorical approach applies *at all* where a ground of removability contains an aspect that must be established, but which is not an element of the statute of conviction. An example of such an inquiry is whether an offense involves fraud or deceit in which the loss

---

(...continued)
definitions."). In still other cases, elements can be found in mandatory sentencing statutes or guidelines. *See Apprendi v. New Jersey*, 530 U.S. 466; *see also Matter of Martinez-Zapata*, 24 I&N Dec. 424 (BIA 2007).

to a victim exceeds $10,000 or more and therefore is an aggravated felony under section 101(a)(43)(M)(i) of the Act. In its unanimous decision in *Nijhawan v. Holder*, 557 U.S. 29 (2009), the Supreme Court held that nonelement aspects of a removability ground, such as the $10,000 loss provision, are not subject to the categorical approach. They are instead subject to a "circumstance-specific" approach that allows inquiry into the facts underlying the conviction without regard to the confines of the modified categorical approach. *See also Matter of Babaisakov*, 24 I&N Dec. 306. Thus, *Nijhawan* has cast considerable doubt upon the Third Circuit's second prong of its divisibility formulation.

Even disregarding that *Nijhawan* has fully resolved the question of the applicability of the categorical approach in the particular context of the $10,000 loss provision at issue there and in *Singh*,[4] we are not inclined to adopt the Third Circuit's unique approach. We do not regard the "invites inquiry" standard as a useful one, since whether or not a statute contains an "invitation" appears to be an inexact concept that manifests itself primarily in the eye of the beholder. It is thus unclear to what statutes of conviction that are not divided into subsections or phrased disjunctively, if any, the Third Circuit would apply the "invites inquiry" formulation.

## D. Third Approach

Under the Second Circuit's third formulation, divisibility would be permitted in "all statutes of conviction . . . regardless of their structure, so long as they contain an element or elements that could be satisfied either by removable or non-removable conduct." *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d at 90 (quoting *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d at 128) (internal quotation marks omitted). We conclude that this broadest of the three formulations should be adopted in the immigration context because it best serves the purposes undergirding the categorical approach.

Many circuit courts have treated statutes as divisible regardless of their structure.[5] *Dulal-Whiteway v. U.S. Dep't of Homeland Sec.*, 501 F.3d at 128.

---

[4] In *Nijhawan*, the Court identified other aggravated felony provisions that contain circumstance-specific aspects to which the categorical approach is inapplicable, including section 101(a)(43)(K)(ii) of the Act, which provides that an aggravated felony for transportation for the purpose of prostitution must be "committed for commercial advantage."

[5] Numerous examples demonstrate the courts' application of a modified categorical approach to criminal statutes of varying structure and construction with little or no regard

(continued...)

This is consistent with our longstanding practice, because we have traditionally applied divisibility analysis to all manner of statutes, regardless of their structure. *See, e.g.*, *Matter of Sanudo*, 23 I&N Dec. 968, 969, 972-73 (BIA 2006) (applying the modified categorical approach to a single-sentence criminal battery statute that was not divided into discrete subsections); *see also Matter of Babaisakov*, 24 I&N Dec. at 312 ("[O]ur published law applies either a categorical or a divisibility analysis, where the actual elements leading to conviction are the determining factor for removal charges hinging on a conviction for a crime.").[6]  Importantly, as the Second Circuit itself recognized in *Dulal-Whiteway*, 501 F.3d at 128, this approach appears also to reflect the understanding of the Supreme Court since, in both *Taylor* and *Shepard*, the Court, "by proceeding to examine the individual's record of conviction, implicitly assumed what we now refer to as the statute's divisibility."

Adopting the broadest of the three outlined approaches is also consistent with the view we share with some courts of appeals that the categorical approach itself need not be applied with the same rigor in the immigration context as in the criminal arena, where it was developed. *See Conteh v. Gonzales*, 461 F.3d at 55-56 (noting several differentiating factors between the criminal and immigration contexts that warrant not applying the categorical approach in the same manner); *see also Ali v. Mukasey*, 521 F.3d 737 (7th Cir. 2008).[7]  In that regard, we further note that the Second Circuit itself has taken

---

(...continued)

for the statute's grammar or structure. *See, e.g.*, *United States v. Fife*, 624 F.3d 441, 444-47 (7th Cir. 2010); *United States v. Medina-Almaguer*, 559 F.3d 420, 421-22 (6th Cir. 2009); *Suazo Perez v. Mukasey*, 512 F.3d 1222, 1225-26 (9th Cir. 2008); *Vargas v. Dep't of Homeland Sec.*, 451 F.3d 1105, 1108-09 (10th Cir. 2006); *Jaggernauth v. U.S. Att'y Gen.*, 432 F.3d 1346, 1354-55 (11th Cir. 2005); *Soliman v. Gonzales*, 419 F.3d 276, 284 (4th Cir. 2005); *Emile v. INS*, 244 F.3d 183, 187-89 (1st Cir. 2001); *Vue v. INS*, 92 F.3d 696, 699-700 (8th Cir. 1996); *accord United States v. Llanos-Agostadero*, 486 F.3d 1194, 1197 (11th Cir. 2007).

[6]  In the context of the predecessor statute to section 237(a)(2)(C) of the Act, we have found divisibility where the alternative means of committing a firearms offense were not enumerated as discrete alternatives in the State statute. *See Matter of Pichardo*, 21 I&N Dec. 330, 333-34 (BIA 1996) (finding divisible a New York statute containing five subdivisions, the first of which could, but did not necessarily, involve a firearms-related possession violation); *see also Matter of Madrigal*, 21 I&N Dec. 323 (BIA 1996) (finding divisible a New York statute containing five subdivisions, the third of which involved a firearm, and the first of which could, but did not necessarily, involve a firearms conviction).

[7]  The Second Circuit has stated in dicta that it is not required to give deference to our interpretation of State or Federal criminal statutes since the Board is not charged with the

(continued...)

the position that the outcome of a categorical inquiry "may be different when defining aggravated felonies in the immigration context than in the sentencing context." *Martinez v. Mukasey*, 551 F.3d 113, 118 (2d Cir. 2008); *see also Lopez v. Gonzales*, 549 U.S. 47, 52 n.3 (2006) (noting the Second Circuit's bifurcated approach). In view of the court's bifurcated approach to defining the substance of certain aggravated felonies for purposes of immigration and criminal law, it may well take a similar approach with respect to divisibility. Therefore, even if the Second Circuit endorses a more restrictive approach in the criminal law arena, our adoption of the broadest approach to divisibility in interpreting the immigration laws may be appropriate.

A recent decision of the Ninth Circuit supports this broad approach to divisibility. In *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc), the Ninth Circuit overruled prior precedents and held, over a dissent, that a statute need not be divisible in order for the modified categorical approach to be properly utilized. Rather, the court determined that while divisible statutes always suffice to permit application of the modified categorical approach, such an approach is also appropriate where the finder of fact is shown to have *necessarily found* (for example, through a plea colloquy) a fact or facts that generically satisfy the elements of a species of offense (or, for immigration purposes, a ground of removability or inadmissibility). Thus, the Ninth Circuit would not limit recourse to the modified categorical approach to circumstances where a statute contained discrete subsections or provisions.[8]

In light of the foregoing, we adopt the third, and most expansive, of the three alternative divisibility approaches presented by the Second Circuit in *Lanferman*.

---

(...continued)
administration of such statutes. *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d at 88; *James v. Mukasey*, 522 F.3d at 253-54, 256. However, in light of our determination that the categorical approach, including the modified categorical approach, need not apply to the same extent in immigration proceedings as it does in the criminal context, deference may be due when the Board or the Attorney General seeks to apply a uniform divisibility approach for immigration purposes. *See generally Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005); *see also Conteh v. Gonzales*, 461 F.3d at 52 n.3 (noting that "the BIA's choice of methodology [as to divisibility] might be regarded as an interpretation of the INA and, thus, entitled to a degree of judicial deference"). We need not decide here, however, whether we are obliged to follow the approaches in circuits, such as the Third and Fifth, that may diverge from ours.

[8] We decline to comment further on *Aguila Montes de Oca* because it has not yet been the subject of significant application within the Ninth Circuit, nor has it been addressed by other circuits. In any case, it is outside the purview of the remand in this case.

E.  Application of the Divisibility Approach to the Respondent's Case

Applying this divisibility approach, we conclude that the respondent is removable under section 237(a)(2)(C) of the Act as an alien convicted of a firearms offense based on his conviction for menacing in the second degree in violation of section 120.14 of the New York Penal Law.  When the respondent committed this offense, section 120.14 provided as follows:

> A person is guilty of menacing in the second degree when:
>     1. He or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon, dangerous instrument or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm;[9] or
>     2. He or she repeatedly follows a person or engages in a course of conduct or repeatedly commits acts over a period of time intentionally placing or attempting to place another person in reasonable fear of physical injury, serious physical injury or death; or
>     3. He or she commits the crime of menacing in the third degree in violation of that part of a duly served order of protection, or such order which the defendant has actual knowledge of because he or she was present in court when such order was issued, pursuant to article eight of the family court act or section 530.12 of the criminal procedure law which directed the respondent or defendant to stay away from the person or persons on whose behalf the order was issued.

The police complaint against the respondent specified that he was alleged to have violated section 120.14(1) by placing his victim in reasonable fear of injury or death by displaying and pointing a revolver at her.  *See People v. Dreyden*, 931 N.E. 2d 526 (Ct. App. N.Y. 2010) (indicating that a valid police complaint is a permissible charging document under New York law).  During his plea colloquy, the respondent admitted that he committed the offense of menacing in that he did "pull out a revolver and point the revolver at the complainant . . . and menace her with that weapon."

Based on the respondent's conviction, the Immigration Judge found him deportable under section 237(a)(2)(C) of the Act, which provides as follows:

---

[9] The term "deadly weapon" was defined as "any loaded weapon from which a shot, readily capable of producing death or other serious physical injury, may be discharged, or a switchblade knife, gravity knife, pilum ballistic knife, metal knuckle knife, dagger, billy, blackjack, or metal knuckles."  N.Y. Penal Law § 10.00(12) (McKinney 1996).  The term "dangerous instrument" was defined as "any instrument, article or substance, including a 'vehicle' . . . , which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing death or other serious physical injury."  N.Y. Penal Law § 10.00(13).

> Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon,[10] part, or accessory which is a firearm or destructive device (as defined in section 921(a) of title 18, United States Code) in violation of any law is deportable.[11]

In our decision of June 22, 2006, we affirmed that removability finding, concluding "that the plea colloquy and the criminal complaint are sufficient to support the Immigration Judge's finding that the respondent was convicted under section 120.14(1) of the New York Penal Law and is removable under section 237(a)(2)(C) of the Act."

Section 120.14 of the New York Penal Law is not a pure firearms statute that outright punishes possessing or carrying a firearm. Indeed, only the first subsection may involve firearms, as contemplated by section 237(a)(2)(C) of the Act. The second subsection is commonly referred to as an anti-stalking provision, and the third involves the violation of a protection order. While there is no dispute that the second and third subsections do not "encompass convictions of crimes for which possessing or carrying firearms is an element," there is likewise no dispute that the respondent was convicted under section 120.14(1). *Kuhali v. Reno*, 266 F.3d 93, 103 (2d Cir. 2001) (stating that section 237(a)(2)(C) of the Act "encompass[es] convictions of crimes for which possessing or carrying firearms is an element");

---

[10] We assume arguendo that the issue whether a weapon is a firearm for purposes of section 237(a)(2)(C) of the Act is not subject to the circumstance-specific approach set forth in *Nijhawan v. Holder*, 557 U.S. 29. The Second Circuit observed in *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d at 89 n.3, that, in contrast to section 101(a)(43)(M)(i), which was at issue in *Nijhawan*, section 237(a)(2)(C) "describes a generic crime, and does not require the 'particular circumstances' analysis." *See also id*. at 92 n.9 (stating that section 237(a)(2)(C) "falls on the 'generic crime' side of the equation"). The Second Circuit further observed that unlike section 101(a)(43)(M)(i), section 237(a)(2)(C) "does not contain words such as 'in which' that would modify the offense so as to indicate that the statute's reference to a firearm is circumstance-specific." *Id*. These observations are supported by Board and circuit court decisions discussing whether certain weapons fall within the Federal definition of a "firearm," as required by section 237(a)(2)(C) of the Act. *See, e.g.*, *Awad v. Gonzales*, 494 F.3d 723, 727 (8th Cir. 2007); *Matter of Mendez-Orellana*, 25 I&N Dec. 254 (BIA 2010).

[11] Section 237(a)(2)(C) of the Act is interpreted broadly. *See Valerio-Ochoa v. INS*, 241 F.3d 1092, 1095 (9th Cir. 2001) ("From a plain reading of [section 237(a)(2)(C) ], it is clear that Congress intended to embrace the entire panoply of firearms offenses."); *Hall v. U.S. INS*, 167 F.3d 852, 855 (4th Cir. 1999) ("[The firearms statute's] comprehensive list of gerunds captures all varieties of conduct relating to firearms transactions. . . . This wide-ranging text evinces an expansive purpose—to render deportable those aliens that commit firearms offenses of any type.").

see also *Matter of Pichardo*, 21 I&N Dec. 330 (BIA 1996); *Matter of Lopez-Amaro*, 20 I&N Dec. 668 (BIA 1993), *aff'd*, 25 F.3d 986 (11th Cir.1994).

Section 120.14(1) provides that a person is guilty of menacing in the second degree when he or she intentionally places or attempts to place another person in reasonable fear of physical injury, serious physical injury, or death by displaying a deadly weapon, dangerous instrument, or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm. Under New York law, the following three elements must be proven beyond a reasonable doubt for a conviction to lie under section 120.14(1):

> (1) That the defendant . . . displayed a deadly weapon, dangerous instrument, or what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm to [the victim];
> (2) That the display of such deadly weapon, dangerous instrument, or what appeared to be a pistol, revolver, rifle, shotgun, machine gun, or other firearm by the defendant . . . placed the victim . . . in reasonable fear of physical injury, serious physical injury or death; and
> (3) That the defendant . . . intentionally placed or attempted to place [the victim] in reasonable fear of physical injury, serious physical injury, or death.

Charges to the Jury and Requests to Charge in a Criminal Case in New York, § 54:2. Second degree—Displaying weapon—Model charge, *available at* CTJNY § 54:2 (Westlaw Oct. 2011).

Section 120.14(1) is itself divisible because the "deadly weapon" may or may not be a firearm under 18 U.S.C. § 921(a). *See* N.Y. Penal Law § 10.00(12) (McKinney 1996) (defining a deadly weapon, in part, as "any loaded weapon from which a shot . . . may be discharged"). In other words, the statute contains an element—use of a "deadly weapon"—that could be satisfied by removable conduct—that is, possession or carrying of "any loaded weapon from which a shot . . . may be discharged." However, it also contains elements that are satisfied by conduct that would not render the respondent removable. For example, the use of a knife or some forms of a "dangerous instrument," such as a vehicle, to commit a violation would not be a removable offense under section 237(a)(2)(C) of the Act because the use of a firearm, as defined in 18 U.S.C. § 921(a), is not involved. *See* N.Y. Penal Law § 10.00(12) (including knives in the definition of a "deadly weapon"), § 10.00(13) (defining a "dangerous instrument"). Moreover, the use of "*what appears to be* a pistol" to commit a violation would also not be a removable offense under section 237(a)(2)(C), because a plastic water pistol, for example, is not a firearm under 18 U.S.C. § 921(a).

Because section 120.14(1) can result in a categorical match or mismatch of elements when compared with section 237(a)(2)(C) of the Act, it is

divisible, regardless of the fact that not one of the three subdivisions standing alone is categorically a firearms offense under section 237(a)(2)(C).

As previously noted, the complaint charged the respondent with violating section 120.14(1) by placing his victim in reasonable fear of injury or death by displaying and pointing a revolver at her. During his plea colloquy, the respondent admitted that he committed the offense of menacing in that he did "pull out a revolver and point the revolver at the complainant . . . and menace her with that weapon." Thus, because both the complaint, which served as the charging instrument, and the plea colloquy are properly considered under the modified categorical approach and establish that the "deadly weapon" at issue was a firearm, we find that the respondent is removable under section 237(a)(2)(C) of the Act.[12] Accordingly, the respondent's appeal will be dismissed.[13]

**ORDER:** The appeal is dismissed.

----

[12] Neither the complaint nor the plea colloquy specifically alleges that the firearm was "loaded," which would appear necessary for it to meet the definition of a "deadly weapon" under New York law. *See supra* note 9. However, whether the firearm was loaded or not is irrelevant to the ground of removability under section 237(a)(2)(C), and we cannot look behind the conviction itself. Moreover, it may well be that an unloaded firearm would constitute a "dangerous instrument" and therefore support the conviction.

[13] The respondent also argues that his conviction is invalid under the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010), and requests that we revisit sua sponte our previous affirmance of the Immigration Judge's denial of cancellation of removal in the exercise of discretion. We decline to address these issues because they are beyond the scope of the Second Circuit's remand. We also have no jurisdiction over the question whether the respondent's conviction is valid.