Cite as 26 I&N Dec. 349 (BIA 2014)
Interim Decision #3807

# Matter of Martin CHAIREZ-Castrejon, Respondent

*Decided July 24, 2014*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The categorical approach, which requires a focus on the minimum conduct that has a realistic probability of being prosecuted under the statute of conviction, is employed to determine whether the respondent's conviction for felony discharge of a firearm under section 76-10-508.1 of the Utah Code is for a crime of violence aggravated felony or a firearms offense under the Immigration and Nationality Act.  *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013), followed.

(2) The Department of Homeland Security did not meet its burden of establishing the respondent's removability as an alien convicted of an aggravated felony where it did not show that section 76-10-508.1 of the Utah Code was divisible with respect to the mens rea necessary to constitute a crime of violence.  *Descamps v. United States*, 133 S. Ct. 2276 (2013), followed.  *Matter of Lanferman*, 25 I&N Dec. 721 (BIA 2012), withdrawn.

(3) Where the respondent did not demonstrate that he or anyone else was successfully prosecuted for discharging an "antique firearm" under section 76-10-508.1 of the Utah Code, which contains no exception for "antique firearms" as defined by 18 U.S.C. § 921(a)(16) (2012), the statute was not shown to be categorically overbroad relative to section 237(a)(2)(C) of the Act, 8 U.S.C. § 1227(a)(2)(C) (2012).  *Matter of Mendez-Orellana*, 25 I&N Dec. 254 (BIA 2010), clarified.

FOR RESPONDENT:  Skyler Anderson, Esquire, Taylorsville, Utah

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Donald W. Cassidy, Associate Legal Advisor

BEFORE:  Board Panel:  PAULEY, MALPHRUS, and GREER, Board Members.

PAULEY, Board Member:

In a decision dated September 18, 2013, an Immigration Judge ordered the respondent removed from the United States.  The respondent has appealed from that decision.  The Department of Homeland Security ("DHS") opposes the appeal.  The appeal will be dismissed in part and sustained in part, and the record will be remanded to the Immigration Judge.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Mexico and a lawful permanent resident of the United States.  He was convicted on December 3, 2012, of felony discharge of a firearm in violation of section 76-10-508.1 of the Utah Code, for which he was sentenced to an indeterminate term of imprisonment not to exceed 5 years.  Based on that conviction, the Immigration Judge found him removable as an alien convicted of (1) a "crime of violence" aggravated felony under sections 101(a)(43)(F) and 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(43)(F) and 1227(a)(2)(A)(iii) (2012); and (2) a firearms offense under section 237(a)(2)(C) of the Act.  The respondent argues that his crime is neither an aggravated felony nor a firearms offense for purposes of determining his removability.  We review these legal issues de novo. 8 C.F.R. § 1003.1(d)(3)(ii) (2013).

After the parties completed their initial appellate briefing, we solicited supplemental briefs from the parties and on May 14, 2014, we held oral argument to address several specific issues, including whether, or to what extent, the approach to statutory "divisibility" in *Descamps v. United States*, 133 S. Ct. 2276 (2013), applies in these removal proceedings.[1]

## II.  ANALYSIS

### A.  Aggravated Felony

As used in section 237(a)(2)(A)(iii) of the Act, the term "aggravated felony" is defined to include "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least one year." Section 101(a)(43)(F) of the Act.  In turn, 18 U.S.C. § 16 (2012) defines a "crime of violence" as

> (a)  an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (b)  any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

For purposes of the "crime of violence" definition, the word "use" denotes volition.  *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004).  The phrase

---

[1]   We wish to express our gratitude to the parties for their helpful supplemental briefs.

"physical force" denotes violent, active force capable of causing pain or injury to another person. *See Matter of Velasquez*, 25 I&N Dec. 278, 281–82 (BIA 2010) (relying on *Johnson v. United States*, 559 U.S. 133, 140 (2010)).

To determine whether the respondent's offense qualifies as an aggravated felony, we employ the "categorical approach," which requires us to focus on the minimum conduct that has a realistic probability of being prosecuted under section 76-10-508.1 of the Utah Code, rather than on the facts underlying the respondent's particular violation of that statute. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684–85 (2013). At all relevant times, section 76-10-508.1 has provided as follows, in pertinent part:

> Felony discharge of a firearm—Penalties
>
> (1) Except as [otherwise] provided . . . , a person who discharges a firearm is guilty of a third degree felony punishable by imprisonment for a term of not less than three years nor more than five years if:
>     (a) the actor discharges a firearm in the direction of any person or persons, knowing or having reason to believe that any person may be endangered by the discharge of the firearm;
>     (b) the actor, with intent to intimidate or harass another or with intent to damage a habitable structure . . . , discharges a firearm in the direction of any person or habitable structure; or
>     (c) the actor, with intent to intimidate or harass another, discharges a firearm in the direction of any vehicle.

We conclude that sections 76-10-508.1(1)(b) and (c) of the Utah Code have as an element the deliberate "use" of violent "physical force" against the person or property of another, thereby qualifying them as categorical crimes of violence under 18 U.S.C. § 16(a). *See Leocal v. Ashcroft*, 543 U.S. at 9; *Matter of Velasquez*, 25 I&N Dec. at 281–82. Specifically, sections 76-10-508.1(1)(b) and (c) require the *intentional* discharge of a firearm, since they both provide that the firearm must be discharged for a particular purpose—that is, to intimidate another, to harass another, or to damage a habitable structure. *Cf. Dean v. United States*, 556 U.S. 568, 572–73 (2009) (holding that the Federal offense of "brandishing" a firearm under 18 U.S.C. § 924(c)(4) (2000) requires an intentional act because the term "brandish" is defined to require that the firearm be displayed for a specific purpose—"in order to intimidate that person"). Further, the firearm must be discharged in the direction of a person or property, namely, a habitable structure or vehicle.

Section 76-10-508.1(1)(a) is substantially different, however. The second clause of that section requires only that the accused "know[] or hav[e] reason to believe" that discharge of the firearm may endanger a

person; it does not require that the firearm be discharged for a particular purpose. Moreover, the first clause neither specifies a mental state with which the firearm must be discharged nor clearly expresses a legislative purpose to impose strict liability. Under these circumstances, section 76-2-102 of the Utah Code provides that "intent, knowledge, or recklessness shall suffice to establish criminal responsibility." Any one of those three mental states is a logical possibility as applied to the first clause of section 76-10-508.1(1)(a).

Because the offense defined by section 76-10-508.1(1)(a) can be proven by reference to reckless conduct, it is not a crime of violence under 18 U.S.C. § 16(a) because it does not have as an element the deliberate "use" of violent physical force against the person or property another. *See United States v. Zuniga-Soto*, 527 F.3d 1110, 1122–24 (10th Cir. 2008).

The offense also does not define a crime of violence under 18 U.S.C. § 16(b). In an ordinary case, a person who "recklessly" discharges a firearm in the direction of others (for instance, by ignoring a known risk that the firearm is loaded) certainly disregards a substantial risk that someone will be hurt, but he does not naturally disregard a substantial risk that a victim will be hurt by means of the *deliberate* "use" of violent physical force. *Leocal v. Ashcroft*, 543 U.S. at 10 & n.7 (holding that § 16(b) "covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense," but clarifying that "§ 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct").

In light of the foregoing, we conclude that the Utah statute is "divisible" vis-à-vis the aggravated felony definition of a crime of violence because the offenses defined by sections 76-10-508.1(1)(b) and (c) are categorically crimes of violence under 18 U.S.C. § 16, while the offense defined by section 76-10-508.1(1)(a) is not. *See Descamps v. United States*, 133 S. Ct. at 2281, 2283 (defining a divisible statute). Thus, the Immigration Judge properly applied a "modified categorical" inquiry to identify the statutory provision under which the respondent was convicted. *See id.* at 2281 (outlining the proper application of the modified categorical approach).

The Immigration Judge also determined that sections 76-10-508.1(1)(a) and (b) were further divisible into several discrete offenses with distinct elements because they disjunctively enumerated intent, knowledge, and recklessness as alternative mental states. He then considered the record of conviction to determine whether the respondent's conduct was intentional or knowing, rather than reckless. This analysis was consistent with our decision in *Matter of Lanferman*, 25 I&N Dec. 721 (BIA 2012). We held there that a statute is divisible whenever its elements "could be satisfied

either by removable or non-removable conduct," regardless of whether they were set forth disjunctively. *Id.* at 727 (quoting *Lanferman v. Bd. of Immigration Appeals*, 576 F.3d 84, 90 (2d Cir. 2009)) (internal quotation mark omitted). In this case, intentional or knowing conduct could constitute a crime of violence, while reckless conduct could not.

As the respondent argues, however, this interpretation is not consistent with the approach to statutory divisibility announced by the Supreme Court in *Descamps v. United States*. The Supreme Court explained there that a criminal statute is divisible, so as to warrant a modified categorical inquiry, only if (1) it lists multiple discrete offenses as enumerated alternatives or defines a single offense by reference to disjunctive sets of "elements," more than one combination of which could support a conviction; and (2) at least one, but not all, of those listed offenses or combinations of disjunctive elements is a categorical match to the relevant generic standard. 133 S. Ct. at 2281, 2283. The Court further explained that for purposes of the modified categorical approach, an offense's "elements" are those facts about the crime which "[t]he Sixth Amendment contemplates that a jury—not a sentencing court—will find . . . unanimously and beyond a reasonable doubt." *Id.* at 2288 (citing *Richardson v. United States*, 526 U.S. 813, 817 (1999)).[2]

The DHS argues in its supplemental brief and at oral argument that the Board is not bound to follow *Descamps* in removal proceedings because that case arises in the criminal context. According to the DHS, we are free to continue to follow *Matter of Lanferman* as a reasonable approach to divisibility under the immigration laws, particularly in the application of terms under the Act, such as a crime of violence aggravated felony. The DHS discusses the differences between criminal and immigration proceedings and argues that *Matter of Lanferman* is more consistent with congressional intent as to the immigration consequences for criminal conduct. While that argument has intuitive appeal, we cannot agree that we have the flexibility to apply *Matter of Lanferman* in this case to the extent that it is inconsistent with our understanding of the Supreme Court's approach to divisibility in *Descamps*.

---

[2] Although Federal criminal defendants have a constitutional right to unanimous jury verdicts, *Andres v. United States*, 333 U.S. 740, 748 (1948), no such jury unanimity requirement applies to the States unless they impose it upon themselves. *Johnson v. Louisiana*, 406 U.S. 356, 359–65 (1972). Thus, where a defendant was lawfully convicted by a nonunanimous jury, we deem the "elements" of the offense to be those facts about which the jury was required to agree by whatever vote was required to convict in the pertinent jurisdiction.

The Federal courts have not accorded deference to our application of divisibility, particularly given that *Descamps* itself makes no distinction between the criminal and immigration contexts and the circuit courts have held that the approach to statutory divisibility announced there applies in removal proceedings in the same manner as in criminal sentencing proceedings. *See Rojas v. Att'y Gen. of U.S.*, 728 F.3d 203, 216 n.12 (3d Cir. 2013) (en banc); *see also Aguilar-Turcios v. Holder*, 740 F.3d 1294, 1301–02 (9th Cir. 2014); *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1280 n.3 (11th Cir. 2013). We therefore conclude that we do not have the authority to continue to apply our divisibility analysis in *Matter of Lanferman*, and we withdraw from that decision to the extent that it is inconsistent with *Descamps*.

Since we are not given deference on this issue, going forward we are also bound to apply divisibility consistently with the individual circuits' interpretation of divisibility under *Descamps*. *Cf. United States v. Carter*, 752 F.3d 8, 17–18 (1st Cir. 2014) (finding that the Maine general purpose assault statute, which references "intentionally, knowingly, or recklessly caus[ing] bodily injury or offensive physical contact," is a divisible statute under *Descamps*, so resort to the modified categorical approach is appropriate); *United States v. Marrero*, 743 F.3d 389, 395–96 (3d Cir. 2014) (finding that simple assault under Pennsylvania law is a crime of violence under the U.S. Sentencing Guidelines because it is divisible under *Descamps* between intentional or knowing conduct, rather than reckless conduct). Given that the United States Court of Appeals for the Tenth Circuit, in whose jurisdiction this case arises, has not applied divisibility under *Descamps* in a precedential decision, particularly in the mens rea context at issue in this case, we will follow our understanding of divisibility as set forth in *Descamps*.

Under *Descamps*, section 76-10-508.1(1)(a) of the Utah Code can be "divisible" into three separate offenses with distinct mens rea only if Utah law requires jury unanimity regarding the mental state with which the accused discharged the firearm. *See* Utah Const. art. I, § 10 (requiring a unanimous jury verdict in criminal cases). *See generally State v. Saunders*, 992 P.2d 951, 966–68 (Utah 1999) (discussing the contours of Utah's jury unanimity requirement). If Utah does not require such jury unanimity, then it follows that intent, knowledge, and recklessness are merely alternative "means" by which a defendant can discharge a firearm, not alternative "elements" of the discharge offense. *See generally Schad v. Arizona*, 501 U.S. 624, 636 (1991) (plurality opinion) ("[L]egislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes."); *Richardson v. United States*, 526 U.S. at 817 ("[A] federal jury need not always decide unanimously

which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime.").

We are not aware of any case directly addressing the issue of jury unanimity in the context of a prosecution under section 76-10-508.1. However, in the context of second-degree murder, the Utah Supreme Court has not required jury unanimity where the single crime can be committed in any of three separate manners, each with a different mens rea. *See State v. Russell*, 733 P.2d 162, 164–68 (Utah 1987) (holding that a Utah jury need not be unanimous in deciding under which of three statutory sections the defendant was found guilty as long as the jurors were unanimous that one or another form of second-degree murder was committed). The lack of Utah authority expressly requiring jury unanimity with respect to the mens rea underlying a violation of section 76-10-508.1, coupled with the Utah Supreme Court's suggestive determination that such unanimity is not required in second-degree murder cases, indicates that section 76-10-508.1 may not be divisible into three offenses with distinct mens rea, or at least that the law is unclear on this point. Because the issue before us involves removability, an issue on which the DHS bears the burden of proof, and the DHS has not come forward with any authority to establish the statute's divisibility, we conclude that the Immigration Judge was not authorized to consult the respondent's conviction record in order to determine which mental state he possessed.[3]

In light of the foregoing, we find that the DHS has not established by clear and convincing evidence that the respondent's conviction under section 76-10-508.1 of the Utah Code renders him removable as an alien convicted of an aggravated felony. *See s*ection 240(c)(3)(A) of the Act, 8 U.S.C. § 1229a(c)(3)(A) (2012); 8 C.F.R. § 1240.8(a) (2013). We will therefore vacate the Immigration Judge's decision sustaining the aggravated felony charge.

## B. Firearms Offense

Having determined that the respondent is not removable for having been convicted of an aggravated felony, we must now decide whether his Utah conviction renders him removable under section 237(a)(2)(C) of the Act. We conclude that it does.

A removal charge under section 237(a)(2)(C) of the Act depends in part on proof that the respondent was convicted of an offense that involved a

---

[3]   Nothing in this order precludes the parties from seeking to introduce supplementary evidence bearing on the divisibility question on remand.

"weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of title 18, United States Code)." According to the respondent, the definition of a "firearm" in section 76-10-501(10) of the Utah Code is categorically overbroad because it encompasses some weapons that are not "firearms" under 18 U.S.C. § 921(a) (2012). Specifically, the respondent observes that the Federal definition of a "firearm" excludes "antique firearms," as defined by 18 U.S.C. § 921(a)(16), while section 76-10-508.1 contains no such exclusion. Thus, the respondent argues that the section 237(a)(2)(C) charge fails because the DHS has not negated the possibility that his conviction involved the discharge of an "antique firearm."

The respondent's argument is unavailing because he has offered no support for his contention that section 76-10-508.1 of the Utah Code is actually used to successfully prosecute individuals who unlawfully discharge "antique firearms." *See Moncrieffe v. Holder*, 133 S. Ct. at 1693 (explaining that an alien who invokes this "antique firearm" argument in order to defeat an aggravated felony charge "would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms"). As the Supreme Court has stated,

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see also Moncrieffe v. Holder*, 133 S. Ct. at 1684–85, 1693.

In *Matter of Mendez-Orellana*, 25 I&N Dec. 254, 255–56 (BIA 2010), we held that the status of a firearm as an "antique" is an affirmative defense to a removal charge under section 237(a)(2)(C) of the Act with respect to which the respondent bears the burden of proof, rather than a fact that the DHS must disprove under the categorical approach. In light of *Moncrieffe*, we clarify that a State firearms statute that contains no exception for "antique firearms" is categorically overbroad relative to section 237(a)(2)(C) of the Act only if the alien demonstrates that the State statute has, in fact, been successfully applied to prosecute offenses involving antique firearms. The alien may carry that burden by proving that the statute was so applied in his own case, but *Moncrieffe* makes clear that the burden may also be satisfied by a showing that the statute has been so

applied to others.  Our holding in *Matter of Mendez-Orellana* is clarified accordingly.

The respondent has not demonstrated that he was prosecuted for discharging an "antique firearm," nor has he identified any Utah decision reflecting that anyone else has ever been so prosecuted.  Thus, we discern no "realistic probability" that section 76-10-508.1 would be applied in that manner.

The respondent argues that the *Moncrieffe* Court's discussion of "antique firearms" in reference to the "realistic probability" test was dicta and that it has been superseded by *Descamps* in any case.  We find those arguments unpersuasive.  Although *Moncrieffe* was not a firearms case, application of the "realistic probability" test was central to the Court's holding, and its discussion of the "antique firearm" issue—which was offered in response to a specific governmental objection—was meant to illustrate how the Court understood that test to apply in actual practice.  Accordingly, that discussion is entitled to great weight.

Further, under *Moncrieffe* and *Duenas-Alvarez,* the "realistic probability" requirement is not a component of, or adjunct to, the modified categorical approach discussed in *Descamps*.  Rather, it is a distinct threshold inquiry that the Court employs to identify the actual "minimum conduct" criminalized by a statute.  *Moncrieffe v. Holder*, 133 S. Ct. at 1684–85 (clarifying that the focus of the categorical approach "on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. at 193)).  Thus, the discussion of divisibility in *Descamps* leaves the *Moncrieffe* Court's discussion of the "realistic probability" test undisturbed.

But even if the "realistic probability" test described in *Moncrieffe* could be viewed as a component of the modified categorical approach, we would not interpret *Descamps* as having overruled or superseded it sub silentio. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) (holding that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower court] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions" (quoting *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989) (internal quotation marks omitted)).

The respondent also contends that no "legal imagination" is required to conclude that section 76-10-508.1 of the Utah Code reaches the discharge of "antique firearms" because Utah law defines the term "firearm" to

include some Federal "antiques" and has not specifically excluded such weapons from the scope of that statute, even though such specific "antique firearm" exclusions do appear in other Utah statutes. We disagree.

Under Supreme Court law, the relevant question is how the prosecuting authority "would apply its statute" in actual practice. *Moncrieffe v. Holder*, 133 S. Ct. at 1685; *Gonzales v. Duenas-Alvarez*, 549 U.S. at 193. The fact that the statute's language does not forbid a broader construction is not determinative. The respondent has identified no Utah case in which a defendant was successfully prosecuted under section 76-10-508.1 for discharging an antique firearm, so the prospect of section 76-10-508.1 being applied to such offenses is nothing more than a "theoretical possibility." Such a theoretical possibility does not prevent the crime from qualifying as a categorical firearms offense under section 237(a)(2)(C) of the Act.[4] Consequently, we conclude that the Immigration Judge properly sustained the firearms offense charge against the respondent.

## C. Relief From Removal

During the proceedings below, the respondent applied for cancellation of removal under section 240A(a) of the Act, 8 U.S.C. § 1229b(a) (2012). The Immigration Judge pretermitted that application, presumably because he believed the respondent's conviction was for a disqualifying aggravated felony. However, the record does not establish that the respondent was convicted of an aggravated felony. We will therefore remand for the Immigration Judge to consider whether the respondent is statutorily eligible for cancellation of removal, and if so, whether he merits a grant of relief in the exercise of discretion. *See* 8 C.F.R. § 1240.8(d).

The respondent also requested that the Immigration Judge continue the proceedings to await adjudication of a pending visa petition, which, if approved, may make him eligible to apply for adjustment of status under section 245 of the Act, 8 U.S.C. § 1255 (2012). The respondent maintains that the denial of that continuance request was erroneous in light of *Matter of Hashmi*, 24 I&N Dec. 785 (BIA 2009). Because we are remanding this case for the Immigration Judge to consider the respondent's application for

---

[4]  Compare *United States v. Aguilera-Rios*, No. 12-50597, 2014 WL 2723766, at *9 (9th Cir. June 17, 2014), where the court found that the realistic probability test was met because California prosecuted conduct involving antique firearms under its firearms statute. *Aguilera-Rios* supports our conclusion that *Moncrieffe* was not implicitly overruled or undermined by *Descamps* and that the realistic probability test applies notwithstanding that a State statute like section 76-10-508.1 of the Utah Code does not, on its face, exclude coverage of antique firearms.

cancellation of removal under section 240A(a) of the Act, we need not address the continuance argument at any length. If the respondent requests a further continuance on remand, however, the Immigration Judge should adjudicate that request in accordance with the factors outlined in *Matter of Hashmi*.

## III. CONCLUSION

In conclusion, the respondent is removable by virtue of his conviction for a firearms offense under section 237(a)(2)(C) of the Act, but he is not removable as an alien convicted of an aggravated felony pursuant to section 237(a)(2)(A)(iii). Accordingly, the record will be remanded to permit the respondent to apply for any form of relief for which he is eligible. 8 C.F.R. § 1240.11(a)(2) (2013).

**ORDER:** The respondent's appeal is sustained in part and dismissed in part.

**FURTHER ORDER:** The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.